# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |  |
|---|---|---|
| | **:** | |
| **KEITH ELAM** | **:** | |
| **3337 Walters Lane** | **:** | |
| **Apartment 102** | **:** | |
| **Forestville, Maryland 20747** | **:** | |
| | **:** | |
| **and** | **:** | |
| | **:** | |
| **RASHAD PRICE** | **:** | |
| **1922 16th Street, S.E.** | **:** | |
| **Washington, D.C. 20020** | **:** | |
| | **:** | |
| **Plaintiffs** | **:** | |
| | **:** | |
| **v.** | **:** | |
| **ROOFTOPDC LLC** | **:** | |
| **d.b.a. BAR DECO** | **:** | |
| **717 6th Street, NW** | **:** | |
| **Washington, D.C. 20001** | **:** | |
| | **:** | |
| **SERVE:** | **:** | |
| **Mark R. Dycio, P.C.** | **:** | |
| **10533 Main Street** | **:** | |
| **Fairfax, Virginia, 22060** | **:** | |
| | **:** | **Civil Action No.: _____** |
| **and** | **:** | |
| | **:** | |
| **NOE LANDINI** | **:** | |
| **717 6th Street, NW** | **:** | |
| **Washington, D.C. 20001** | **:** | |
| | **:** | |
| **and** | **:** | |
| | **:** | |
| **FRANCO LANDINI** | **:** | |
| **717 6th Street, NW** | **:** | |
| **Washington, D.C. 20001** | **:** | |
| | **:** | |
| **and** | **:** | |
| | **:** | |
| **COREY FEY** | **:** | |
| **717 6th Street, NW** | **:** | |
| **Washington, D.C. 20001** | **:** | |

|                        | : |
| ---------------------- | - |
| **and**                | : |
|                        | : |
| **SHANE HENDERSON**    | : |
| **717 6th Street, NW** | : |
| **Washington, D.C. 20001** | : |
|                        | : |
| **Defendants.**        | : |
| ============================== | : |

## COMPLAINT

COMES NOW Plaintiffs KEITH ELAM and RASHAD PRICE, by and through undersigned counsel, Billy L. Ponds, of The Ponds Law Firm, who respectfully submits this Complaint against Bar Deco, Noe Landini, Franco Landini, Corey Fey, and Shane Henderson. In support of this Complaint, Plaintiffs alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1332, 28 U.S.C. §1343(a)(4) and the Civil Rights Act of 1964 (Title VII, 42 U.S.C. §2000e-2). The amount of controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this court.

2.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

3.      Keith Elam is filing his Complaint with this Court within ninety (90) days of receipt of the U.S. Equal Opportunity Employment Commission Dismissal and Notice of Rights letter dated and issued on November 27, 2017, for EEOC Case #570-2016-01606.

4.      Rashad Price is filing his Complaint with this Court within ninety (90) days of receipt of the U.S. Equal Opportunity Employment Commission Dismissal and Notice of Rights letter dated and issued on November 27, 2017, for EEOC Case #570-2016-01605.

5.     Plaintiffs submit that this Court has jurisdiction over all claims for relief cited herein.

6.     All of the acts complained of herein occurred in the District of Colombia.

7.     Venue is proper in this Court as set forth herein.

## PARTIES

8.     Keith Elam ("Elam") is an African-American male who served as a grill cook for Bar Deco bar and restaurant. At all relevant times herein, Elam was over the age of eighteen (18).

9.     Rashad Price ("Price") is an African-American male who served as a sous-chef for Bar Deco bar and restaurant. At all relevant times herein, Price was over the age of eighteen (18).

10.     ROOFTOPDC LLC ("Bar Deco") is a limited liability company that was formed under the laws of Virginia and has its principal place of business under the name Bar Deco in the District of Columbia.

11.     Noe Landini ("Noe") is co-owner of Bar Deco, the Landini Brothers, the Fish Market, and Pop's Old Fashioned Ice Cream, located in Old Town Alexandria, Virginia.

12.     Franco Landini ("Franco") is co-owner of Bar Deco, the Landini Brothers, the Fish Market, and Pop's Old Fashioned Ice Cream, located in Old Town Alexandria, Virginia.

13.     Shane Henderson ("Henderson") is the Chef at Bar Deco. Henderson is being sued in his official capacity as an agent of Bar Deco.

14.     Corey Fey ("Fey") is the Executive Chef at Bar Deco. Fey is being sued in his official capacity as an agent of Bar Deco.

## FACTS

15.     In August of 2015, Noe Landini and Franco Landini opened Bar Deco, a bar and restaurant located at 717 6th Street, NW, Washington, D.C., 20001, which is in close proximity to the Verizon Center.

16.     At the time Plaintiffs were employed at Bar Deco, Jesse Maas ("Maas") was the Director of Operations, Chelsea Sexton ("Sexton") was the General Manager, Fey was the Executive Chef and Henderson was the Chef.

17.     Prior to his employment at Bar Deco, Elam had two (2) years of experience as a line cook at the "GBD" restaurant.

18.     When Bar Deco opened in September 2015, the kitchen was predominantly African-American.

19.     Over a period of approximately nine (9) months, Bar Deco began to discharge African-American employees without cause, replacing them with Latino employees who were as qualified, or less qualified, than the African-American employees who were discharged.

20.     Several African-American employees, including but not limited to Christopher Wright ("Wright"), Price and Elam were subjected to racial discrimination, harassment and a hostile work environment throughout their employment with Bar Deco.

21.     Wright worked one hundred twenty (120) hours in the first two (2) weeks.

22.     Bar Deco failed to fully compensate Wright for the overtime hours he worked during his first two (2) weeks of employment with Bar Deco.

23.     It took Wright over six (6) months to be properly compensated for the overtime hours he had worked.

24.     Rather than give Wright a lump sum, Bar Deco spread Wright's payments out over six (6) pay periods.

25.     Although it took Bar Deco over six (6) months to fully compensate Wright for his overtime hours, other employees were compensated immediately.

26.     During the first week Henderson was hired as the new Chef, he was AWOL on his first Sunday at Bar Deco.

27.     At the time Henderson was AWOL, he had the only key to open the restaurant.

28.     Upon information and belief, no disciplinary action was taken against Henderson for being AWOL.

29.     When Wright was sick with a contagious illness he was still required to come into work, under threat of losing his job.

30.     Upon information and belief, shortly after Henderson joined as the new Bar Deco Chef, he threatened to fire each African-American kitchen employee.

31.     Henderson threatened to fire Wright multiple times.

32.     Fey made numerous racially charged remarks to African-American employees at Bar Deco.

33.     On one occasion, Fey stated to the kitchen staff that "black people are on welfare more than white people".

34.     On another occasion, Fey stated to the kitchen staff that "white people are smarter than black people".

35.     Bar Deco has a disciplinary action form that is used to record any misconduct, which includes the name of the perpetrator, the date, the time, the occurrence, and any action taken.

36.     During Wright's tenure at Bar Deco, he was never written-up for any misconduct, nor was he ever formally reprimanded.

37.    On January 4, 2016, Henderson sent Wright a text message terminating his employment at Bar Deco.

38.    The sole reason Wright was terminated was his race.

39.    Subsequent to Wright's termination, Henderson promoted Juan Cruz ("Cruz"), who at the time was line-cook, to fill Wright's sous-chef position.

40.    Cruz is not an African-American.

41.    At the time of his promotion, Cruz did not possess the same skills and qualifications as Wright.

42.    Bar Deco personnel regularly observed Cruz consume alcohol during working hours to the point of his becoming intoxicated.

43.    Henderson had knowledge of Cruz's inappropriate consumption of alcohol during working hours at the time he promoted him.

44.    Henderson told each new employee to "watch out for Cruz because he drinks on the job".

45.    Bar Deco had previously fired an African-American employee, Curtis Lindsey, under suspicion that he was consuming alcohol while at work.

46.    Subsequent to Wright's termination, Price and Elam were terminated without a legitimate nondiscriminatory reason.

47.    Price was hired as a Bar Deco sous-chef in March 2016.

48.    Henderson failed to provide any training or instruction to Price.

49.    Price's subordinates, including but not limited to, Elam, had to provide Price with information on how to operate the kitchen of Bar Deco.

50.     Price's subordinates were not asked to train Price and it was not part of their work responsibilities.

51.     Non African-American employees, including but not limited to Cruz, were provided training and instruction from Henderson, Fey or other supervisors when they were hired.

52.     Shortly after Price commenced employment at Bar Deco, his six (6) month old daughter became severely ill with respiratory syncytial virus (RSV), a life-threatening medical condition.

53.     As a result of his daughter's illness, Price admitted his daughter to the Children's Hospital in Washington, D.C., where she subsequently fell into a coma.

54.     Despite the fact that Price was under a tremendous amount of emotional distress, he was forced to report to work every day at Bar Deco, working six (6) days a week, twelve (12) hours a day.

55.     Upon information and belief, Price was threatened to be terminated if he missed any time to be with his daughter while she was in the hospital.

56.     On March 20, 2015, Price's daughter underwent a surgical procedure.

57.     Price was at the hospital while his daughter was in surgery and immediately after the doctors had finished the procedure.

58.     When Henderson found out that Price was at the hospital he ordered Price to return to work, and informed Price that he needed to return immediately so that Henderson would not miss a concert later that day.

59.     During the time when Price's daughter was ill, Henderson worked eight (8) hours a day, from 10:00 a.m. to 6:00 p.m., while the kitchen staff and the employees he supervised, including Price, worked twelve (12) hours a day.

60.     Henderson would often tell Price to arrive at work at a certain time, but then would subsequently tell Fey, Sexton and Mass that Price had arrived late, even though Price would arrive at the time Henderson had told him to.

61.     Price consistently sent Henderson text messages to inform him that he was on his way to work, and never received replies from Henderson telling him that he was late.

62.     During Price's tenure at Bar Deco, he was never written-up for any misconduct, nor was he ever formally reprimanded.

63.     On March 26, 2016, Bar Deco was especially busy due to the nearby Washington Capitals' game at the Verizon Center. During this time, Henderson decided to host a plate tasting for the owner of the restaurant.

64.     Due to Henderson being preoccupied with the plate tasting, Price was required to perform Henderson's duties in addition to his own sous-chef duties.

65.     Despite the fact that Price was performing both his own duties and Henderson's duties, and Price received no formal training for either of these duties, Sexton reported to the kitchen and reprimanded Price for the length of time it took him to serve a patron dessert.

66.     In response to Sexton's criticism, Price suggested that she speak to Henderson.

67.     Henderson overheard the aforementioned exchange from another part of the kitchen, became visibly irate, and yelled at Price, "You can't cut a fucking cake? Go take a fucking hike!"

68.     On March 27, 2016, Fey terminated Price's employment at Bar Deco, allegedly due to the incident that occurred on March 26, 2016.

69.     Other non African-American employees, including but not limited to Cruz, were not terminated for allegedly taking too long to serve a desert.

70.     At the time Sexton reprimanded Price, he was attempting to balance his duties with Henderson's duties during an extremely busy time.

71.     Non African-American sous-chefs at Bar Deco, including but not limited to Cruz, were not required to perform the sous-chef responsibilities in addition to Henderson's responsibilities.

72.     The motivating factor for Price's termination was his race.

73.     Price was replaced by a non African-American, Cruz, who was less qualified than he was, had a known drinking problem and was openly racist towards African-Americans.

74.     In September 2015, Elam commenced his employment at Bar Deco as a grill cook.

75.     During his tenure at Bar Deco, Elam was subjected to racial discrimination, harassment and a hostile work environment. In addition, the final employment action of terminating Elam was racially motivated.

76.     In February 2016, Black History Month, Henderson added a dish to the menu called "Pasta Nero" which consisted of spaghetti topped with squid ink.

77.     Henderson informed the kitchen staff, who were predominantly African-American, that "Nero" translates to "black" in Italian.

78.     Henderson told the kitchen staff that the dish was from Africa.

79.     Henderson's remark regarding the "Pasta Nero" dish had intentional racial undertones and was directed at the African-American kitchen employees.

80.     The fact that Henderson released this dish and made the aforementioned comments during Black History Month demonstrates Henderson's racially charged sentiments.

81.     In February 2016, Henderson held a meeting with the kitchen staff.

82.     During the aforementioned meeting, Henderson told the kitchen staff that any leftover food that was going bad should be used to make a "family meal" for the kitchen staff to eat.

83.     Henderson stated that the cost of the family meal would be funded by a small portion of all the kitchen staff's salaries.

84.     Henderson also informed the kitchen staff that the food had to be consumed at the restaurant, and could not be taken home.

85.     Henderson instructed Elam that he would be in charge of cooking the "family meal" and that since Elam was preparing it Henderson expected the meal to be comprised of "fried chicken and watermelon".

86.     This is a pejorative racial statement that Henderson intended to disparage African-Americans.

87.     Non African-American employees were allowed to eat whatever food they wanted, free of charge, whenever they wanted.

88.     In March 2016, Elam cooked some lamb that was about to spoil for his own consumption.

89.     Cruz, a line-cook at the time, saw Elam cooking the lamb and took a picture without Elam's knowledge or consent. Cruz subsequently sent the picture to Henderson.

90.     Henderson responded to the picture Cruz had sent by calling Elam into his office.

91.     Henderson told Elam that he was stealing by cooking the leftover lamb that was about to spoil.

92.     Elam reminded Henderson of the prior meeting in which Henderson told the kitchen staff that they should cook any leftover food that was close to spoiling.

93.     Henderson responded to Elam's reminder about the prior meeting by saying that Elam should have asked him before cooking the leftover lamb.

94.     Henderson had not said anything about seeking his consent in the prior meeting.

95.     During his tenure at Bar Deco, Elam noticed a trend of firing African-American employees without cause and then replacing them with Latino employees.

96.     Elam inquired about openings for some of his friends, who were African-American, but Henderson told him there were no current openings.

97.     Within a few days after Elam's inquiry, new Latino employees were hired.

98.     On March 28, 2016, Henderson sent Elam a text message stating that he was fired.

99.     Elam called Henderson to appeal his termination and find out the reason, and Henderson informed Elam that he was fired because he couldn't get along with the sous-chef.

100.    The new sous-chef was Cruz, who unbeknownst to Elam had very recently replaced Price.

101.    Cruz had a known racial bias towards African-Americans and had a tendency to harass and mistreat African-Americans.

102.    Henderson fired other African-Americans for the same alleged reason, their inability to get along with the sous-chef.

103.    While Elam was extremely uncomfortable working with Cruz due to his open racial bias, Elam never retaliated against or did anything that could be perceived as failing to get along with Cruz.

104.    Upon information and belief, other African-Americans who were terminated for the alleged failure to get along with Cruz never retaliated against or did anything that could be perceived as failing to get along with Cruz.

105.     After Elam was terminated, he was replaced by a non African-American who was less qualified than Elam.

106.     After Elam was terminated, he applied for unemployment benefits through the District of Columbia.

107.     Bar Deco opposed Elam's claim for unemployment benefits.

108.     Bar Deco informed the office of administrative hearings (OAH) that Elam was terminated because he was caught giving away food that he was prohibited from giving away.

109.     The Honorable James C. Harmon, Jr., Administrative Law Judge, issued a Final Order in Case No 2016-DOES-00979 (See Exhibit 1 at 10-11) finding that:

a.       Bar Deco's employee food policies were not consistently enforced;

b.       Bar Deco offered no evidence other than testimony from an individual who purportedly viewed a surveillance video showing Elam went upstairs with food;

c.       There was no clear written policy for Bar Deco's employee food policies;

d.       After Henderson allegedly informed Elam that he should not give the "family meal" to individuals upstairs, Elam did not do so.

110.     Bar Deco never informed Elam that this was the reason he was terminated.

111.     Bar Deco also informed the office of administrative hearings (OAH) that Elam was terminated because he had moldy food at his work station.

112.     The Honorable James C. Harmon, Jr., Administrative Law Judge, issued a Final Order in Case No 2016-DOES-00979 (See Exhibit 1 at 12) finding that:

a.       Elam shared a work station with a day grill cook, who, if there was any moldy food found, easily could have been responsible for it;

b.      Elam provided credible testimony that he regularly checked his work station and never noticed moldy food;

c.      Bar Deco provided no evidence to support this allegation

113.    During his employment at Bar Deco, Fey told Elam to set up the smoke room however he saw fit in order to increase his efficiency.

114.    Elam was never told anything to the contrary of what Fey told him regarding the smoke room.

115.    Bar Deco informed the office of administrative hearings (OAH) that Elam was terminated because he failed to properly set up his work station.

116.    The Honorable James C. Harmon, Jr., Administrative Law Judge, issued a Final Order in Case No 2016-DOES-00979 (See Exhibit 1 at 12) finding that:

a.      Bar Deco never established what the proper setup for Elam's workstation was;

b.      Bar Deco never trained Elam as to how he should set up his workstation.

117.    Bar Deco never informed Elam that this was the reason he was terminated.

118.    Bar Deco informed the office of administrative hearings (OAH) that Elam was terminated because he made complaints about working with the Sous Chef.

119.    The Honorable James C. Harmon, Jr., Administrative Law Judge, issued a Final Order in Case No 2016-DOES-00979 (See Exhibit 1 at 13) finding that there was no evidence of any complaints, nor any reason proffered for how these complaints would have adversely affected Elam's ability to perform his job duties.

120.    While Bar Deco presented a number of Employee Incident Reports, none were signed by Elam and none were presented to Elam during his tenure at Bar Deco.

121.     Upon information and belief, these Employee Incident Reports were generated after Elam was terminated to create a pretextual reason for Elam's termination.

122.     Elam was terminated despite the fact that he dutifully performed all of his duties as a Bar Deco grill cook.

123.     The protocol for firing people at Bar Deco was for two (2) supervisors to accompany the individual being discharged into the alley, and then have a conversation explaining why the individual was being terminated.

124.     Bar Deco deviated from the established protocol for terminating employment when they sent Elam a text message simply informing him that his employment was terminated effective immediately.

125.     On March 29, 2016, one day after Elam was terminated, Henderson inadvertently sent Elam a text message stating, "just to touch base with you that we have cleared two more of those monkey blacks out of the kitchen so things should run well now."

126.     Upon information and belief, the text message inadvertently sent to Elam on March 29, 2016 was intended for Fey, Noe and Franco.

127.     The text message, sent to Elam one (1) day after his termination, is proof of a racially discriminatory scheme to terminate African-American employees because of their race.

128.     The text message, sent to Elam one (1) day after his termination, indicates that the motivating factor for the termination of Elam was his race.

129.     Prior to Elam's termination, Wright and Price were also terminated without a legitimate nondiscriminatory reason.

130.     Prior to Elam's termination, when he inquired about positions for his friends he was told there were no openings, and within a few days new Latino employees were hired.

131.     Upon information and belief, each time an African-American employee was terminated they were replaced by a Latino employee.

132.     Elam and Price were subjected to a pattern of severe and pervasive racial harassment and discrimination during their tenure at Bar Deco due to their race.

133.     Elam and Price were treated differently than similarly-situated non African-American employees during his tenure at Bar Deco due to their race.

## FIRST CLAIM FOR RELIEF

### DISPARATE TREATMENT RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. §2000(e), 42 U.S.C. §1981 AND THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT (DCHRA), DC CODE § 2-1402.01

### (AGAINST DEFENDANT BAR DECO)

134.     Plaintiffs incorporates by reference paragraphs 1 through 133 as if fully set forth herein.

135.     At all times relevant herein, Elam and Price, as African-American males, were members of a protected class.

136.     Elam and Price ere qualified for their positions and performed their duties, at minimum, at a satisfactory level.

137.     Despite Elam and Price's qualifications and the fact that they performed their duties at minimum in a satisfactory manner, they were terminated.

138.     After Elam and Price were terminated, they were replaced by an individual who was as qualified, or less-qualified, as him.

139.     The day after Elam was terminated, he was sent a text message that stated "just to touch base with you that we have cleared two more of those monkey blacks out of the kitchen so things should run well now."

140.     Price was terminated one (1) day prior to Elam's termination.

141.     This text message is further proof that the decision to terminate Elam and Price's employment was racially motivated.

142.     African-American employees were not allowed to miss work, even for contagious illnesses and family emergencies, whereas similarly-situated non African-American employees, including but not limited to Henderson, were able to be AWOL and miss work to attend music concerts.

143.     African-American employees had to pay for food to eat at Bar Deco, whereas no other employees were required to pay for food at Bar Deco.

144.     African-American employees were only able to consume food that was spoiled or close to spoiling, whereas all other employees were able to consume fresh food.

145.     African-American employees were not able to take food home with them, whereas all other employees could have the African-American kitchen employees prepare them food to take home.

146.     Defendant Henderson, a senior employee of Bar Deco, through a pattern of racially motivated harassment, intentionally and unlawfully discriminated against Elam and other African-American Bar Deco kitchen staff because of their race.

147.     The comments and conduct of Henderson contained herein demonstrate that he has a racial bias towards African-Americans, and this bias drove Henderson's intentional harassment toward Elam.

148.     The direct and proximate result of the racial discrimination and harassment of Elam and Price, perpetrated by defendant Henderson, was the final employment action of termination. This was done for no legitimate non-discriminatory reason.

149.     Elam and Price's race, African-American, was the motivating factor for the final employment action of termination.

150.     The racial harassment and discrimination Elam and Price had to endure directly and proximately caused them serious mental and emotional despair.

151.     Elam and Price's termination of employment caused them to lose out on pay, employment benefits, damaged their professional reputation and career, and has now caused them to incur legal expenses.

152.     Elam and Price have suffered and continue to suffer extreme emotional distress and personal and professional humiliation, which has diminished their enjoyment of life and caused them additional pain and suffering.

153.     The outrageous conduct of defendant Henderson as described herein was done with malice and with conscious disregard for Elam and Price's federally protected rights.

154.     At all relevant times, defendants Henderson and Fey were Elam and Price's supervisors. Henderson and Fey were able to, and did, take tangible employment actions against Elam and Price.

155.     The tangible employment action that Henderson and Fey took against Elam and Price was terminating their employment without a legitimate nondiscriminatory reason.

**SECOND CLAIM FOR RELIEF**

**DISPARATE TREATMENT RACE DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT (DCHRA), DC CODE § 2-1402.01**

**(AGAINST DEFENDANTS NOE AND FRANCO)**

156.     Plaintiffs incorporates by reference paragraphs 1 through 155 as if fully set forth herein.

157.     While Plaintiffs incorporates by reference paragraphs 1 through 155, they rely primarily on the allegations contained in Count I to support the DCHRA claim against Noe and Franco Landini in Count II.

158.     At all relevant times herein, Noe and Franco were co-owners of Bar Deco.

159.     All of the discriminatory acts alleged herein were committed within the scope of Noe and Franco Landini's employment.

160.     Noe and Franco Landini are employers within the definition of the DCHRA.

161.     Noe and Franco Landini are personally liable under the DCHRA for the racial discrimination against Plaintiffs alleged herein.

162.     Upon information and belief, defendants Noe and Franco Landini were responsible for the creation of all personnel policies in effect at Bar Deco that include but are not limited to:

        a.     Bar Deco's food policy for African-American kitchen employees.

        b.     Bar Deco's leave policy for African-American kitchen employees.

163.     Upon information and belief, defendants Noe and Franco had knowledge of, and made the final decision for, all decisions related to hiring and firing employees at Bar Deco.

164.     The aforementioned includes the decision to terminate the employment of Plaintiffs and replace them with non-African American employees who were less qualified.

165.     Race was the motivating factor in the decision to terminate Plaintiffs.

166.     Upon information and belief, Noe and Franco harbored a bias towards African-Americans.

167.     Upon information and belief, Noe and Franco were the intended recipients of the text message sent by Henderson referring to African-American kitchen employees as "monkey blacks".

168.     In allowing and perpetrating the discrimination described herein, Noe and Franco Landini have acted with malice and reckless indifference to the DCHRA rights of Plaintiffs, causing Plaintiffs to be harmed emotionally and economically.

169.     At all relevant times herein, Noe and Franco acted with a reckless disregard for the DCHRA rights of all African-American Bar Deco employees.

170.     Noe and Franco Landini were supervisors with the power to remedy the harassment of African-American employees and were aware of this discrimination, but chose to take no meaningful action, remaining deliberately indifferent to the situation.

171.     Noe and Franco Landini's conduct alleged herein gives rise to punitive damages.

## THIRD CLAIM FOR RELIEF

### DISPARATE TREATMENT RACE DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT (DCHRA), DC CODE § 2-1402.01

### (AGAINST DEFENDANTS FEY AND HENDERSON)

172.     Plaintiffs incorporates by reference paragraphs 1 through 171 as if fully set forth herein.

173.     While Plaintiffs incorporates by reference paragraphs 1 through 171, they rely primarily on the allegations contained in Count I to support the DCHRA claim against Fey and Henderson in Count III.

174.     At all relevant times herein, Fey and Henderson were supervisors of Plaintiffs.

175.     All of the discriminatory acts alleged herein were committed within the scope of Fey and Henderson's employment.

176.     Fey and Henderson are employers within the definition of the DCHRA.

177.     Fey and Henderson are personally liable under the DCHRA for the racial discrimination against Elam alleged herein.

178.     Despite Plaintiffs qualifications and the fact that they performed their duties at minimum in a satisfactory manner, they were terminated.

179.     After Plaintiffs were terminated, they were replaced by individuals who was as qualified, or less-qualified, than Plaintiffs.

180.     Defendant Henderson, a senior employee of Bar Deco, through a pattern of racially motivated harassment, intentionally and unlawfully discriminated against Plaintiffs and other African-American Bar Deco kitchen staff because of their race.

181.     Defendant Fey, a senior employee of Bar Deco, through a pattern of racially motivated harassment, intentionally and unlawfully discriminated against Plaintiffs and other African-American Bar Deco kitchen staff because of their race.

182.     The comments and conduct of Henderson and Fey contained herein demonstrate that they have a racial bias towards African-Americans, and this bias drove their intentional harassment toward Plaintiffs.

183.     The direct and proximate result of the racial discrimination and harassment of Plaintiffs, perpetrated by defendants Fey and Henderson, was the final employment action of termination. This was done for no legitimate non-discriminatory reason.

184.     Plaintiffs' race, African-American, was the motivating factor for the final employment action of termination.

185.     The racial harassment and discrimination Plaintiffs had to endure directly and proximately caused them serious mental and emotional despair.

186.     Plaintiffs' termination of employment caused them to lose out on pay, employment benefits, damaged their professional reputation and career, and has now caused them to incur legal expenses.

187.     Plaintiffs have suffered and continue to suffer extreme emotional distress and personal and professional humiliation, which has diminished their enjoyment of life and caused them additional pain and suffering.

188.     The outrageous conduct of defendant Henderson as described herein was done with malice and with conscious disregard for Plaintiffs' federally protected rights.

189.     At all relevant times, defendant Henderson was Plaintiffs' supervisor. Henderson was able to, and did, take tangible employment actions against Elam.

190.     At all relevant times, defendant Fey was Plaintiffs' supervisor. Fey was able to, and did, take tangible employment actions against Price.

191.     Fey and Henderson were supervisors with the power to remedy the harassment of African-American employees and was aware of discrimination towards them, but chose to take no meaningful action, remaining deliberately indifferent to the situation.

192.     The tangible employment action that Henderson took against Elam was terminating his employment without a legitimate nondiscriminatory reason.

193.     The tangible employment action that Fey took against Price was terminating his employment without a legitimate nondiscriminatory reason.

### FOURTH CLAIM FOR RELIEF

**HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. §2000(e), 42 U.S.C. §1981 AND THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT (DCHRA), DC CODE § 2-1402.01**

### (AGAINST DEFENDANT BAR DECO)

194.     Plaintiffs incorporates by reference paragraphs 1 through 193 as if fully set forth herein.

195.     The harassment of Plaintiffs over a period of approximately seven (7) months, perpetrated by defendants Henderson, Fey, and other unnamed Bar Deco employees, was intentional, severe and pervasive.

196.     During the period of time that Plaintiffs were employed at Bar Deco, the workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe and pervasive enough to alter the conditions of his employment, and created an abusive working environment.

197.     The pattern of racial harassment toward Plaintiffs and other African-American Bar Deco kitchen staff constitutes a hostile work environment.

198.     Supervisors with the power to remedy the ongoing racial harassment of African-Americans, including but not limited to Henderson and Fey, were on notice of this discrimination, but chose to take no action, remaining deliberately indifferent to the situation.

199.     Supervisors, including but not limited to Henderson and Fey, discouraged Plaintiffs from seeking further relief for the ongoing racial harassment.

200.     Defendants Noe and Franco Landini knew, or should have known, of the ongoing racial harassment that constituted a hostile work environment, and failed to take any corrective action; instead, defendants Noe and Franco remained deliberately indifferent to the ongoing racial harassment.

201.     The totality of the circumstances surrounding Plaintiffs demonstrates that they were subjected to a hostile work environment because of their race, African-American.

202.     The hostile work environment created harmed Plaintiffs by having a significantly negative impact on the employment opportunities available to them.

203.     The hostile work environment harmed Plaintiffs by causing them significant mental anguish and extreme emotional distress.

204.     In allowing and perpetrating the harassment and discrimination described herein, Fey and Henderson have acted with malice and reckless indifference to the DCHRA rights of Plaintiffs, causing Plaintiffs to be harmed physically and economically.

205.     Plaintiffs have suffered emotional and psychological harm, have experienced loss of employment opportunities and have been denied employment benefits.

206.     At all relevant times herein, Fey, Henderson, Noe, and Franco Landini acted with a reckless disregard for the Title VII and DCHRA rights of all Bar Deco employees.

207.     The conduct alleged herein gives rise to punitive damages.

**FIFTH CLAIM FOR RELIEF**

**HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT (DCHRA), DC CODE § 2-1402.01**

**(AGAINST DEFENDANTS NOE, FRANCO, FEY AND HENDERSON)**

208.     Plaintiffs incorporates by reference paragraphs 1 through 207 as if fully set forth herein.

209.     While Plaintiffs incorporates by reference paragraphs 1 through 207 as if fully set forth herein, Plaintiffs relies primarily on the allegations set forth in Count 4 to support his DCHRA hostile work environment claims against defendants Noe and Franco Landini, Fey and Henderson.

210.     At all relevant times herein, Noe and Franco Landini were co-owners of Bar Deco.

211.     At all relevant times herein, Fey and Henderson were supervisors of Plaintiffs.

212.     All of the discriminatory acts alleged herein were committed within the scope of Noe Landini, Franco Landini, Fey and Henderson's employment.

213.     Noe and Franco Landini, Fey and Henderson are employers within the definition of the DCHRA.

214.     Noe and Franco Landini, Fey and Henderson are personally liable under the DCHRA for the racial discrimination against Plaintiffs alleged herein.

215.     In allowing and perpetrating the harassment and discrimination described herein, Noe and Franco Landini, Fey and Henderson have acted with malice and reckless indifference to the DCHRA rights of Plaintiffs, causing Plaintiffs to be harmed physically and economically.

216.     Plaintiffs have suffered emotional and psychological harm, have experienced loss of employment opportunities and have been denied employment benefits.

217.     At all relevant times herein, Noe Landini, Franco Landini, Fey and Henderson acted with a reckless disregard for the DCHRA rights of all Bar Deco employees.

218.     The conduct alleged herein gives rise to punitive damages.

## SEVENTH CLAIM FOR RELIEF
### WRONGFUL TERMINATION
### (AGAINST DEFENDANT BAR DECO)

219.     Plaintiffs incorporates by reference paragraphs 1 through 218 as if fully set forth herein.

220.     At all times relevant herein, Plaintiffs were a member of a federally protected class and a class protected by the DC Code.

221.     Plaintiffs were wrongfully terminated on March 27, 2016 and March 28, 2016, respectively, as they were terminated solely because they were African-American.

222.     Terminating employees solely on the basis of their race is a violation of public policy.

223.     Bar Deco intentionally created a pretextual reason when they notified Plaintiffs they were terminated, and then in the case of Elam, created different pretextual reasons when Bar Deco opposed Elam's application for unemployment compensation benefits.

224.     The text message sent the day after Elam's termination referring to "monkey blacks", the pattern of terminating African-American employees for the same proffered reason, failure to get along with an openly racist sous-chef, and the baseless subsequent reasons proffered by Bar Deco all give rise to an inference of wrongful termination.

225.     Bar Deco's termination of Plaintiffs is a violation of public policy.

226.     Bar Deco is liable for Plaintiffs' wrongful termination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Keith Elam and Rashad Price demand judgment against all Defendants as follows:

I.      Re-pleads and re-alleges paragraphs 1 through 226 with the same force and effect as if fully set forth herein;

II.     Subject to further discovery, reserves the right to amend the Complaint;

III.    An award of compensatory damages against Bar Deco in favor of Plaintiffs for the Title VII violations;

IV.     An award of punitive damages against Bar Deco in favor of Plaintiffs for the Title VII violations;

V.      An award of compensatory damages against all defendants in favor of Plaintiffs for the DCHRA violations;

VI.     An award of punitive damages against all defendants in favor of Plaintiffs for the DCHRA violations;

VII.     An award of compensatory damages against Bar Deco for the wrongful

termination of Plaintiffs.

VIII.    Back pay and front pay;

IX.      Attorney's fees, costs and prejudgment interest;

X.       Any and all other relief that this Court deems just and fair.

<div style="margin-left:40%">

Keith Elam
Rashad Price
By Counsel

Respectfully submitted,


_____

Billy L. Ponds
Counsel for the Plaintiff
The Ponds Law Firm
2101 L Street, NW
Suite 400
Washington, DC 22037
Telephone Number: (202) 333-2922
E-Mail: plfpc@aol.com

</div>

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| **KEITH ELAM,** *et al.* | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No.: _____** |
| | : | |
| **v.** | : | |
| | : | |
| **ROOFTOPDC LLC,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |
| =============================== | : | |

## JURY DEMAND

The plaintiffs hereby request a trial by jury of twelve (12) on all triable issues, including the amount of damages to be awarded.

Keith Elam
Rashad Price
By Counsel

Respectfully submitted,

*/s/ Billy L. Ponds*
Billy L. Ponds
Counsel for the Plaintiff
The Ponds Law Firm
2101 L Street, NW
Suite 400
Washington, DC 22037
Telephone Number: (202) 333-2922
E-Mail: plfpc@aol.com