UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KEITH ELAM, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 18-cv-0431 (GMH) |
| ROOFTOPDC LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Over two years ago, Plaintiffs Keith Elam and Rashad Price brought this suit alleging that their termination as kitchen workers at a local restaurant run by Defendants was motivated by discrimination on the basis of their race. Earlier this year, the case ended with something of a whimper. During discovery, Plaintiffs' counsel withdrew; soon thereafter, the Court dismissed the case without prejudice because *pro se* Plaintiffs failed to prosecute it further. Not fully satisfied with that favorable result, certain Defendants—specifically, RoofTopDC, LLC, Noe Landini, and Franco Landini—filed a motion seeking an order requiring Plaintiffs and their counsel to pay Defendants' attorney's fees contending that Plaintiffs' claims were frivolous from the start and were brought in bad faith, and that proceedings in this matter were multiplied vexatiously by Plaintiffs' counsel. Because Defendants have not met the high bar for the award of fees, the Court denies the motion.

**I.   BACKGROUND**

Plaintiffs Keith Elam and Rashad Price worked in a kitchen, supervised by Defendants Corey Fey and Shane Henderson, at RoofTopDC, LLC, owned by Defendants Noe Landini and Franco Landini. ECF No. 1. After being fired within days of each other in March 2016, Plaintiffs

1

filed this suit against Defendants asserting claims of disparate treatment discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act, as well as a common law wrongful termination claim. *Id.* Certain Defendants responded to the Complaint by filing a partial motion to dismiss Plaintiffs' common law wrongful termination claim as having no basis in law (ECF No. 20), which Plaintiffs did not oppose. ECF No. 21. Accordingly, this Court granted the motion to dismiss that claim. ECF No. 22.

The case then proceeded through discovery, with a flurry of extensions and two discovery disputes. ECF Nos. 30–71. The second discovery dispute centered on Mr. Elam's cell phone records (the "Phone Dispute"). Defendants attempted to compel production of Mr. Elam's complete cell phone records in November 2019, believing the records could be relevant to damages, impeachment, or one of Defendants' asserted non-discriminatory reasons for firing Mr. Elam. ECF No. 68. Plaintiffs attempted to protect certain of these phone records, asserting that they were protected from disclosure by the Fifth Amendment. ECF No. 71. The Court never resolved this dispute because Plaintiffs' counsel withdrew while the motion was pending, and the Court eventually dismissed the case without prejudice for failure to prosecute in January 2020. ECF Nos. 76, 79. Thereafter, Defendants filed the motion for attorney's fees now before the Court.[1] ECF No. 80. Mr. Price and Plaintiffs' former attorneys Billy Ponds and Michael Fortini opposed the motion. ECF Nos. 83, 85. Mr. Elam, at that point *pro se*, did not respond to the motion.

## II. DISCUSSION

Federal courts follow the American Rule of attorney's fees—that is, each party, whether it prevails or not, typically bears its own attorney's fees. *See, e.g.*, *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). Deviations from that rule are rarely granted and are considered

---

[1] Defendants Corey Fey and Shane Henderson, who were Defendants to this suit at its filing, did not join the motion for attorney's fees.

exceptional. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247–70 (1975) (discussing history of American Rule and its rare exceptions). Seeking such an exception here, Defendants assert that they are entitled to the payment of their attorney's fees under three statutes, the Federal Rules of Civil Procedure, and the court's inherent power. ECF No. 80. The Court will address in turn below each asserted basis for an award of fees.

### A.  28 U.S.C. § 1927

Defendants first seek a fee award pursuant to 28 U.S.C. § 1927. Under that statute, a court may award attorney's fees against an attorney[2] who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. To justify such an award, an attorney's conduct must show "evidence of recklessness, bad faith, or improper motive" in filings or proceedings that are deemed to be unreasonable and vexatious. *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998) (quoting *Travelers Ins. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416–17 (5th Cir. 1994)). Thus, courts use section 1927 to sanction attorneys who abuse the judicial process with "repeated" misbehavior or "singularly egregious" misconduct. *United States v. Wallace*, 964 F.2d 1214, 1220 (D.C. Cir. 1992).

Here, Defendants claim that Plaintiffs' counsel withheld Mr. Elam's unredacted phone records under a baseless assertion of Fifth Amendment privilege and pleaded a frivolous wrongful termination claim in the original complaint. ECF No. 80 at 7–9, 17–18. Neither contention demonstrates recklessness or bad faith. Defendants' assertion about Mr. Elam's phone records effectively asks the Court to resolve the merits of the Phone Dispute. The Court never did so, and it need not do so now after the case has been dismissed. The record before the Court is sufficient for it to

---

[2] The Court observes that, even if Defendants had proven entitlement to fees under section 1927, only Plaintiffs' counsel would be obligated to pay the fee award; an attorney's client is not liable for fees awarded under that section. *See, e.g., Alexander v. FBI*, 541 F. Supp. 2d 274, 299 (D.D.C. 2008) (noting that, "by its terms, an award under Section 1927" may be assessed "only [against] counsel in litigation, not [ ] parties").

3

determine that Plaintiffs' counsel was seeking to protect their clients' interests while attempting to resolve the dispute in an efficient manner. Indeed, after the Phone Dispute arose, Plaintiffs' counsel offered Defendants multiple, reasonable ways to resolve it: the Court's *in camera* review of the records in question or their review by counsel for one of the other Defendants not involved in the dispute. ECF No. 83 at 2–4. On that basis, the Court finds that, whatever the merits of the parties' disagreement over the records, Plaintiffs' counsel was plainly seeking to resolve it in good faith and without the need for extensive litigation.

Similarly, Plaintiffs' pleading of a wrongful termination claim in the original complaint does not provide sufficient basis for action under section 1927. True, it prompted a (four-page) motion to dismiss which proved successful. The record shows, however, that Plaintiffs' counsel did not vexatiously prolong these proceedings even with respect to that failed claim. Rather, the claim was quickly conceded without further litigation, and the case proceeded as it otherwise would have on Plaintiffs' five other claims that were not subject to a motion to dismiss. ECF Nos. 20, 21.

Thus, Defendants have shown neither repeated misbehavior by Plaintiff's counsel nor singularly egregious misconduct rising to the level of recklessness or bad faith that would warrant awarding attorney's fees under section 1927. Certainly the record here is far removed from the flagrant conduct of attorneys in cases where fees have been awarded under that statute. *See, e.g.*, *Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112, 119–21 (D.D.C. 2016) (awarding attorney's fees under section 1927 against lawyer who "hijack[ed]" a closed case and filed several bad faith motions in a personal vendetta against another lawyer); *LaPrade*, 146 F.3d at 906 (awarding attorney's fees against a law firm that used an unknowing state court to obtain an *ex parte* order staying arbitration ordered by a federal court); *Fritz*, 818 F.2d at 925–26 (awarding attorney's fees

4

against a lawyer who "repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing this litigation"). Defendants' request for an award of fees under 28 U.S.C. § 1927 is denied.

### B.        42 U.S.C. § 2000e-5(k)

Defendants next move for payment of their fees under 42 U.S.C. § 2000e-5(k), contending that Plaintiffs could not make a *prima facie* case for any of their claims and brought the suit in a bad-faith attempt to extort Defendants. ECF No. 80 at 7–18. Defendants contend that Plaintiffs could not make *prima facie* cases for their disparate race treatment claims because Plaintiffs did not sufficiently identify a similarly-situated comparator and did not prove Defendants treated Plaintiffs differently based on their race. Defendants further contend that Plaintiffs could not make a *prima facie* hostile work environment claim by attacking the accuracy of Plaintiffs' representations concerning an allegedly discriminatory kitchen meal policy, the legitimacy of racist comments allegedly made by Mr. Fey, and the legitimacy of a racist text message allegedly sent by Mr. Henderson to Mr. Elam. *Id.* at 9–16. Further, Defendants allege that a pre-suit text conversation between Plaintiffs shows they brought the suit to extort Defendants. Again, the Court disagrees.

Under 42 U.S.C. § 2000e-5(k), a court may, in its discretion, award attorney's fees to a prevailing party in certain civil rights cases, including, as here, a claim of disparate race treatment. 42 U.S.C. § 2000e-5(k). A party moving for attorney's fees under section 2000e-5(k) must meet their "burden of establishing entitlement to an award." *Fox v. Vice*, 563 U.S. 826, 832–34 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Prevailing plaintiffs in civil rights actions will normally be so entitled because they act as "private attorney general[s]." *Fox*, 563 U.S. at 832–34. Prevailing defendants, however, must meet a higher bar. *Christianburg Garment*

*Co. v. EEOC*, 434 U.S. 412, 421–22 (1978). Specifically, to award fees to a defendant, a court must find that the plaintiff's civil rights "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 422. That is, courts may award attorney's fees to a prevailing defendant where the plaintiff knowingly brought a frivolous claim, demonstrated bad faith in the litigation, or attempted to use the litigation to extort a settlement offer. *See Mbulu v. Bureau of Nat'l Affairs, Inc.*, 448 F. Supp. 2d 122, 125 (D.D.C. 2006). "To determine if a case was frivolous, the court asks 'whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful.'" *Savoy v. Dist. of Columbia*, No. 94-731, 1997 WL 122928, at *2 (D.D.C. Mar. 11, 1997) (quoting *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)). For an award of attorney's fees under section 2000e-5(k), then, a defendant must show that the plaintiff filed a civil rights case devoid of factual merit to support it or litigated the case past a reasonable point when the infirmities in the plaintiff's claims had become apparent. *See Mbulu*, 448 F. Supp. 2d at 126–27 (declining to award attorney's fees under section 2000e-5(k) against a plaintiff who failed to make *prima facie* case but litigated until losing on summary judgment because the suit was not wholly without factual support); *see also Johnson v. Nat'l Ass'n of Secs. Dealers, Inc.*, No. 81-0977, 1983 WL 613, at *2–4 (D.D.C. June 6, 1983) (granting attorney's fees under section 2000e-5(k) against a plaintiff who brought her case to trial because evidence presented at trial made it clear the claim had no factual support). Thus, the question is not, as Defendants would have it, whether Plaintiffs have made out a *prima facie* case for disparate race treatment and a hostile work environment, it is whether their claims were "so lacking in merit that [they were] groundless." *Savoy*, 1997 WL 122928, at *2.

6

Plaintiffs' counsel represent that they had sworn statements from Plaintiffs that supported the allegations in their complaint. ECF No. 83 at 7. In that complaint, Plaintiffs alleged that Defendants fired them because they were African American. ECF No. 1, ¶¶ 63–72, 99–119. Mr. Price alleged that he and another African-American employee, Christopher Wright, were fired and replaced by a less-qualified non-African American, Juan Cruz. *Id.*, ¶¶ 20, 37–44, 73. Mr. Elam alleged that he was similarly replaced by a non-African American who was less qualified. *Id.*, ¶ 105. Plaintiffs further asserted that by February 2016 Defendants had a policy of allowing non-African-American employees to eat any food they wanted for free, while African-American kitchen employees were charged a small portion of their salary for the opportunity to cook and eat food that was close to spoiling. *Id.*, ¶¶ 82–84, 87, 92. Plaintiffs contended that Mr. Fey, who was an Executive Chef at the restaurant, made repeated racially-charged remarks to African-American employees at work, including statements that African Americans are less intelligent and receive more welfare than white people. *Id.*, ¶¶ 32–34. Mr. Elam contended that Mr. Henderson, who was a Chef at the restaurant, asked him to cook a meal for the kitchen staff and said he expected it to be fried chicken and watermelon. *Id.*, ¶ 85. Plaintiffs also alleged that, following their termination, Mr. Henderson inadvertently texted Mr. Elam that he "cleared two more of those monkey blacks out of the kitchen." *Id.* ¶ 125. Finally, during an unemployment benefits proceeding prior to the complaint's filing, an Administrative Law Judge determined that the restaurant "ha[d] not presented sufficient evidence to demonstrate that [Mr. Elam] committed an act or acts that constitute willful, deliberate, or intentional work-related misconduct." ECF No. 1-7 at 11.

For their part, Defendants answered the complaint, denied discrimination, and asserted that Plaintiffs were fired for legitimate, nondiscriminatory reasons. ECF No. 27, ¶¶ 72, 129. Defendants contended that they fired Mr. Elam because he could not get along with the sous chef and they

caught him giving away food that he was prohibited from giving away, among other legitimate nondiscriminatory reasons. *Id.*, ¶¶ 99, 108. Defendants maintained that they fired Mr. Price for numerous nondiscriminatory reasons including threats of violence against coworkers. *Id.*, ¶ 68. Defendants denied that they applied the kitchen meal policy disparately based on race and denied the alleged discriminatory comments from Mr. Fey and Mr. Henderson, alleging that Mr. Elam himself made the remarks about eating fried chicken and watermelon for the kitchen staff meal. *Id.*, ¶¶ 32–34, 85–87. Defendants also denied the racist text message allegedly sent by Mr. Henderson to Mr. Elam. *Id.*, ¶¶ 125. Finally, Defendants admitted that an Administrative Law Judge issued final orders in unemployment benefits cases involving Plaintiffs and Bar Deco, but denied Plaintiffs' characterizations of the Judge's findings. *Id.*, ¶¶ 112, 116, 119.

In their motion for attorney's fees, Defendants maintain, as they did in their answer, their denials of the substance of Plaintiffs' claims. ECF No. 80 at 14–15. Defendants elaborated that the meal policy is strictly based on whether or not employees are part of the kitchen staff, not based on race and noted that the racist text message allegedly sent from Mr. Henderson to Mr. Elam was not found on the forensic examination report for Mr. Henderson's phone. *Id* at 13, 16 & n.5. Defendants also contend that Plaintiffs cannot use Mr. Cruz as a comparator because he did not replace Mr. Price or Mr. Wright after they were fired. Rather, Mr. Cruz temporarily assumed their positions as an interim solution. ECF No. 80 at 14–15. Indeed, Defendants maintain that Mr. Price, not Mr. Cruz, was hired at Bar Deco as the permanent replacement for Mr. Wright. *Id.*

Based on the record before the Court, Plaintiffs' allegations are sufficient to deny an award of fees to Defendants. Plaintiffs' complaint was based on sworn statements by Plaintiffs and alleged facts that could support claims of disparate race treatment and hostile work environment. While Defendants disagree with Plaintiffs' characterizations of certain events and policies, they

have not established that Plaintiffs' claims were "so lacking in merit that [they were] groundless." *Savoy*, 1997 WL 122928, at *2.  Additionally, while Defendants argue that Plaintiffs failed to identify a similarly-situated comparator, the establishment of a similarly-situated comparator for civil rights claims is often resolved by the jury. *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016).  As with the merits of the Phone Dispute, the Court need not—and, indeed, cannot on this record—resolve the question of whether Mr. Cruz was a similarly-situated comparator now.  Defendants also did not put forth sufficient evidence to show that the case persisted beyond a reasonable point after any infirmities in Plaintiffs' case had become clear.  Plaintiffs did not oppose Defendant's motion to dismiss their unlawful termination claim, Plaintiffs' counsel worked with Defendants to resolve the Phone Dispute, and the case was dismissed without prejudice shortly after Plaintiffs' counsel withdrew.  Indeed, by any traditional measure, the case terminated quickly.

Defendants further seek fees under section 2000e-5(k) because they contend that a pre-suit text conversation between Plaintiffs in April 2016, which was produced in discovery, shows that Plaintiffs brought their claims with an intent to extort the Defendants.  ECF No. 80 at 7–8.  The Court does not agree with Defendants' interpretation of the texts.  They read as follows:

> Price: Plus I got good news and bad news bad news is they know what's goin on good news is they already trying to throw an offer
> Elam: What did they offer
> Price: I know somebody who know them their lawyer in particular and they want to throw 5 I think for me you and the lawyer to split b******* deal
> Elam: 5,000 that's it.. oh naw they gotta fatten that joint up way more
> Price: My thoughts exactly brother either way we going to break their pockets are we going to boot them out of Gallery Place
> Price: I meant to say or boot them out of Gallery Place
> Price: Either way they f***** we good
> Elam: No doubt.. aye where u manna meet uo tomorrow 2 go see this lawyer cause I don't know where he is located at

9

ECF No. 80 at 8.³ These texts do not demonstrate that Plaintiffs were seeking to extort money from Defendants based on the "wrongful use of force, fear, or threats." *United States v. Nardello*, 393 U.S. 286, 290 (1969). Rather, they paint a more prosaic picture—albeit with colorful language—of individuals rejecting a nuisance-value settlement offer from Defendants' counsel which they found too low. Such a conversation is unremarkable and falls short of showing that Plaintiffs brought suit in bad faith. Defendants' motion for attorney's fees under section 2000e-5(k) is denied.

### C. 42 U.S.C. § 1988

Defendants also move for attorney's fees under 42 U.S.C. § 1988, asserting that Plaintiffs could not make a *prima facie* hostile work environment claim. ECF No. 80 at 15–17. In determining whether to assess fees under that section, this Circuit uses the same framework for determining whether to award fees under 42 U.S.C. § 2000e-5(k): the defendants must show that the plaintiffs brought a frivolous, baseless, or groundless claim without factual basis or litigated their claim past a reasonable point. *See Harris v. Group Health Ass'n, Inc.*, 662 F.2d 869, 873–74 & n.13 (D.C. Cir. 1981); *see also Hensley*, 461 U.S. at 433 n.7. Again, the issue is not whether Plaintiffs alleged a *prima facie* hostile work environment case, but whether the claim was "so lacking in merit that it was groundless." *Savoy*, 1997 WL 122928, at *2. And, again, Defendants do not meet that standard here.

Plaintiffs pleaded that their supervisors made disparaging comments about African Americans on multiple occasions, told Mr. Elam to prepare a meal which they expected to be fried chicken and watermelon, and knew about and tolerated racism toward Plaintiffs and other African-American employees. ECF No. 1, ¶¶ 32–24, 85, 195–200. Although Defendants denied these

---

³ These texts are verbatim as produced in Defendants' motion and the forensic examination report of Mr. Price's phone. Any misspellings or censoring appear as in that motion and report.

allegations, the veracity of Plaintiff's allegations was never adjudicated in this case. This Court need not make that determination now for the purpose of awarding Defendants fees. Rather, it is enough for the Court to find that Defendants have not shown that Plaintiffs' hostile work environment claim was frivolous, baseless, or groundless. The Court so finds here. Defendants' motion for attorney's fees under section 1988 is denied.

### D. Rule 11

Rule 11 permits parties to move for sanctions if an attorney or party signs a pleading or motion that has an improper purpose, including "to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or has no basis in fact or in law. Fed. R. Civ. P. 11. Rule 11 motions for sanctions must be made separately from all other motions and satisfy the Rule's safe-harbor provision of notifying the opposing party and giving them twenty-one days to change their behavior prior to the motion being filed. *Id.* Courts in this District have denied Rule 11 motions for failing to meet these requirements. *See, e.g.*, *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 81 n.29 (D.D.C. 2007) (declining to consider sanctions for failure to move separately from other motions); *Brown v. FBI*, 873 F. Supp. 2d 388, 408 (D.D.C. 2012) (stating that failure to satisfy the safe-harbor provision warrants dismissal).

Defendants' Rule 11 motion fails on two procedural grounds, either of which alone warrants dismissal: first, it does not appear that Defendants satisfied Rule 11's safe-harbor provision,[4] second they have not moved for sanctions separately from any other motion. Fed. R. Civ. P. 11; *see also Brown*, 873 F. Supp. 2d at 408; *McManus*, 530 F. Supp. 2d at 81 n.29. Defendants' Rule 11 motion also fails on the merits. The motion offers the same arguments Defendants made for a

---

[4] Plaintiffs' counsel state in their opposition that Defendants did not meet and confer with them about Rule 11 nor allow them an opportunity to cure any alleged deficiency. ECF No. 83 at 6. Defendants did not respond to this contention in their Reply. ECF No. 90.

11

statutory award of attorney's fees. ECF No. 80 at 21–22 (arguing case was baseless, case was brought with intent to extort settlement money, and Plaintiffs vexatiously withheld unredacted phone records). For the reasons stated above, Defendants' request for fees under Rule 11 is denied. *See supra* Section II.A–C.

### E. Rule 37

Defendants also move for Rule 37(d) sanctions against Plaintiffs. ECF No. 80 at 21–22. That rule allows parties to move for sanctions for failure to appear for a deposition or for failure to respond to interrogatories or inspection requests. Fed. R. Civ. P. 37(d). Parties moving for discovery sanctions under this rule must certify that they have attempted in good faith to confer with opposing counsel to attempt to resolve the issue. Fed. R. Civ. P. 37(b)(1)(B). This Court has wide discretion to impose discovery sanctions and may deny motions for sanctions absent a showing of willful misconduct. *Giles v. Transit Emp. Fed. Credit Union*, 794 F.3d 1, 14–15 (D.C. Cir. 2015); *see also Exum v. Gen. Elec. Co.*, 819 F.2d 1158, 1164 (D.C. Cir. 1987).

Defendants do not make it clear what behavior warrants a sanction under Rule 37(d). To the extent that they believe the actions of Plaintiffs' counsel during the Phone Dispute warrants such a sanction, the Court disagrees for the reasons discussed above. *See supra* Section II.B. Regardless, the motion also fails on two procedural grounds: first, it does not state any sanctionable failure to respond to the discovery requests enumerated within the Rule, second it does not certify that Defendants in good faith attempted to resolve the issue prior to filing the motion. Fed. R. Civ. P. 37(d). Therefore, Defendants' motion for Rule 37(d) sanctions is denied.

### F. Inherent Power of the Court

As discussed above, in federal courts, the American Rule, requiring that each party bears its own attorney's fees, applies. *Baker Botts*, 576 U.S. at 126; *Alyeska*, 421 U.S. at 247–71. In the

rare case where a deviation from that Rule becomes necessary, courts usually rely on fee-shifting statutes or the sanction provisions of the Federal Rules of Civil Procedure; however, if neither reaches behavior that nonetheless warrants sanctions, a court may use its inherent power to fee shift. *Chambers, Inc.*, 501 U.S. at 50. Thus, a court may shift attorney's fees under its inherent power if a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 33. This exception to the American Rule serves to punish wrongdoers and may be applied when a party's bad faith occurred during the litigation or when bad faith gave rise to the litigation. *See, e.g.*, *Nepera Chem., Inc. v. Sea-Land Serv., Inc.*, 794 F.2d 688, 701–02 (D.C. Cir. 1986).

Here, Defendants make no new arguments as to why the Court should exercise its inherent power to shift their attorney's fees to Plaintiffs. Defendants again contend that the Court should grant the rare exception to the American Rule because Plaintiffs' counsel vexatiously multiplied proceedings through the Phone Dispute and the wrongful termination claim; Plaintiffs and their counsel knew or should have known that their case was baseless, frivolous, and unreasonable; and Plaintiffs brought suit in bad faith, intending to extort Defendants out of settlement money. ECF No. 80 at 5–7. The Court finds these arguments unavailing for the same reasons it stated previously. *See supra* Section II.A–C.

## III.  CONCLUSION

Defendants RoofTopDC, LLC, Noe Landini, and Franco Landini are understandably frustrated that because Plaintiffs failed to prosecute this case Defendants have been denied an opportunity to defend themselves at trial from public allegations of discrimination. Nevertheless, the Court cannot now adjudicate the merits of the parties' dispute on the record before it after the case has been dismissed. To be clear, its decision in this matter should not be interpreted as a finding that Plaintiffs would have prevailed had the case gone forward. Rather, the Court denies

Defendants' motion only because it has not met the high bar required to shift their attorney's fees to Plaintiffs under the relevant fee shifting statutes, the Federal Rules of Civil Procedure, or the Court's inherent power. Accordingly, it is hereby

**ORDERED** that Defendants RoofTopDC, LLC, Noe Landini, and Franco Landini's motion for attorney's fees and sanctions (ECF No. 80) is **DENIED.**

    **SO ORDERED.**

Date:  November 16, 2020

                                                          G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE